The first case on today's docket is cause number 22-60184, United States of America v. Christopher Wade. Is the appellant ready to proceed? And is the appellee ready to proceed? Yes, your honor. All right. Appellant, you may proceed. May it please the court. Good afternoon, your honors. My name is Kelsey Disnukes, and I represent the appellant, Christopher Wade, in this cause. I'd request five minutes of my time be reserved for rebuttal, please. The district court's final judgment against the appellant should be reversed and vacated in this case and remanded to the district court for resentencing. Specifically, the district court erred by finding that Mr. Wade qualified for enhanced penalties under the Armed Career Criminal Act, or ACCA. During my time today, I intend to address one primary issue, and that's why the district court's application of ACCA penalties in this case violates the Sixth Amendment, as well as the standards articulated by the US Supreme Court in the cases Shular and Descamps. The crux of this case is ultimately whether or not Mr. Wade's prior Mississippi State conviction for conspiracy to distribute meth qualifies as a predicate offense under the ACCA, which would thereby make him eligible for a mandatory minimum of 15 years, as well as a nine-point enhancement to his offense level under the US Sentencing Guidelines. I submit that Mr. Wade's prior conviction does not qualify as a predicate offense, because his conduct in connection with that prior conviction, as defined by the offense elements under Mississippi State law, did not involve drug distribution, manufacture, or possession with intent. For this reason, Mr. Wade is not an armed career criminal, and the ACCA penalties were erroneously applied. Do you think, counsel, do you think our opinion in Vickers is still precedent in this circuit? Your Honor, I don't have an answer to that question at this moment. Well, OK, well, so the Vickers case adopted what some panels have called a broader definition of the word involving than shoelarm. Yes, sir. OK. And so, we have . . . forgive me, I thought you were arguing about this in the brief, that we have panels of our court that say . . . a case like Prentiss and Clark that say that Vickers is still . . . it wasn't overruled, but maybe its reasoning was changed a little. I just wanted to know if you had a view on . . . I guess I'm just asking what's our precedent on this whole question about, you know, does it involve the conduct? Yes, Your Honor. I think the case Shular addresses that. So, in Shular specifically, with regard to the definition of involve, there are certainly other appellate circuits that, as well as this one, it sounds like, that have held that involve has a broader definition, like relates to or connects with. I believe Shular nullifies the application of those cases. Shular . . . So, the definition of involves is different. The one that's talked about in Shular is different than the one in Vickers, and yet we have precedents that say Shular didn't overrule Vickers, and I'm just wondering how do we figure out what our precedent is then? Yes, Your Honor. I believe Shular is precedent. Well, I mean, that's always a safe answer. It is the Supreme Court. Yes, sir. I believe it is. It's a 2020 Supreme Court case. In Shular, they noted that Congress's use of the word involve is plainly intended to consider a defendant's conduct. That's an applicable . . . that's the crux of this case, I believe. You don't think that conspiracy . . . what is the crime here? Conspiracy to distribute meth? That's correct. You don't think that involves distribution of meth? Not if we're using Shular's definition of the word involve. No, Your Honor. Shular said the defined involve to mean necessarily require. So in the context of Shular, again, a 2020 Supreme Court case, the question for the sentencing court becomes whether the defendant's conduct in connection with the prior conviction necessarily required manufactured distribution or possession with intent. Conspiracy under Mississippi State law, which Mr. Wade was convicted under, Section 9711, says that conspiracy is a crime of agreement. The elements set out by 9711 say that two people are guilty of the felony of conspiracy when they conspire to an unlawful purpose. So as defined by Mississippi State law, there may be other states that define it differently, which could qualify under the ACCA, so I'm certainly not advocating that it never qualifies, but as defined by Mississippi State law, I do not believe it qualifies as an ACCA predicate. At Mr. Wade's sentencing hearing, a more generic approach was used. The prosecution argued that conspiracy is kind of like the crime of attempt, both inchoate crimes. Some appellate circuits have found attempt crimes to be predicate crimes under the ACCA. At the sentencing hearing, both the prosecution and ultimately the district court relied on the case U.S. v. McKinney. That's a 2006 case from the First Circuit, wherein the court, again, by using a broader definition of the word involve, held that conspiracy generally qualified as a predicate offense under the ACCA. Respectfully, the McKinney case is as irrelevant as it is unhelpful. Not only is that case 16 years old and out of the First Circuit, again, the Supreme Court's ruling in Shuler, the parties were agreed as to the Supreme Court's definition of the word involve, and the Supreme Court appears to adopt that in that case. And so I believe that that's good case law that applies here today. I think the question that naturally stems from the Shuler case is what conduct should the sentencing court look at to determine whether or not the prior conviction involved manufactured distribution of possession of intent. The Supreme Court, again, provides an answer to that in the case U.S. v. Deskamps. In Deskamps, a prosecutor relied on a copy of the factual basis from a defendant's state court plea hearing. The contention being, well, the defendant didn't object to the factual basis at the state court plea hearing, so we're all agreed that these facts did happen here today. The Supreme Court disagreed, citing a constitutional rub with the Sixth Amendment that contemplates that a jury, not a sentencing court, will find such facts unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense. The Supreme Court further stated that a defendant's guilty plea waives only the right to a jury's determination of the offense elements. Whatever a defendant says or does not say about facts cannot license the sentencing court later to impose additional judgment. Deskamps is clear. The Sixth Amendment prohibits sentencing courts from relying on facts beyond those established by offense elements, except in very limited cases where prior convictions occur under divisible statutes, statutes that lay out several variations of an offense. Then the sentencing court may look to the factual context of the conviction to determine which portion of the statute the defendant was convicted under. An example of this would be statutes setting out burglary of a dwelling as well as burglary of a vehicle. That's not what we have here. 9711 under the Mississippi Code lays out one crime, conspiracy, and the elements are very clear that's what Mr. Wade was convicted of. The only conduct established by the elements of Mr. Wade's, under Mississippi law, is Mr. Wade's unlawful agreement. Nothing more. At sentencing, the district court was not permitted to consider anything beyond his agreement when deciding whether his conduct involved manufactured distribution or possession with intent. At the time of sentencing, the district court had no idea whether the object of the conspiracy, the distribution, had even been attempted, much less completed, nor whether Mr. Wade himself had had any active role in the attempted or completion of that, of the object of the conspiracy. It was only aware that Mr. Wade, at some point in time, had agreed to an unlawful purpose with another person. What would you say if this had been an attempt case? I'm sorry? If this had been an attempt case rather than an agreement case? Had this been an attempt case? In other words, not just the agreement, but he tried to actually engage in this activity but somehow fell short of completing it. I think, again, you would have to look to the statutory elements. Attempts... You're saying that would not involve either? That would not constitute involvement either? I think depending on how that's defined under Mississippi law, you would have to look to the offense elements. Attempt crimes in Mississippi, I think, generally require an overt act. The defendant went out on the limb trying to complete the crime but was something intervened. That's not the case with conspiracy. Again, we don't know if the object of conspiracy was ever even attempted, much less completed, nor whether Mr. Wade himself was involved in that group who attempted or completed. We only know that he conspired or agreed with another person to an unlawful purpose. I think attempt does totally change the conversation because you have conduct like Shuler contemplates. I hope that answers... Are you still making the 5-year, 10-year argument? There was obviously an exchange at 28 days. I'm not. No, Your Honor. At the last minute, I thought I missed a very obvious argument and I did not. Ms. Hampton's response to filing was absolutely correct on that. Why do we need to decide this issue? Given what the sentencing court said, it's going to be the same sentence regardless. It seems that even theoretically, hypothetically, if you were to win on your promise, it's a wasted judicial resources. I disagree, Your Honor. Respectfully, the statement... Do you agree that the district court went out of its way to say, I'm doing the same thing, same sentence regardless? I did. Then why send it back? Yes, Your Honor. Respectfully, that statement by the district court speaks to the patent unfairness of Mr. Wade's sentencing. At sentencing, Mr. Wade had substantial mitigating factors raised by both defense counsel as well as the prosecution. As a result, he received a sentence of 96 months, which was nearly a 50% reduction from the bottom of his guideline range, which was 180 to 210 months. Are you saying that if we were to send it back hypothetically and the district judge were to do exactly what they've told us, re-sentence without the ACCA but in the exact same bottom line sentence, you would have a separate appellate point? I would have... You would appeal from that? You'd have other arguments? I would, Your Honor. Why weren't they presented here, though? If that happened, if that were to happen, we went back to the district court, she gave him the same thing again, the district court would have to totally ignore the mitigating factors, which she already took into account, and instead impose the top of the guideline range because if the ACCA doesn't apply, his guideline range will move from 180 to 210 months down to 77 to 96 months. Are these arguments you've presented in this appeal? No, Your Honor, because that hasn't happened yet. She would have to ignore mitigating factors that are substantial. Okay, you're talking about issues that the district court did not analyze in the previous proceedings. Your Honor, I'm saying that that issue hasn't happened yet, so you had asked me if we go back to district court and she does the exact same thing again, well, she already took into account mitigating factors and gave him a substantial reduction, so if she found those to be persuasive, I think it would be wholly and entirely capricious for her to say, never mind, I'm ignoring them now and giving him the top of the guideline range. To me, that would be entirely capricious. We'll acknowledge we frequently find sentences to be harmless when the district court has made very clear they've got alternative theories for getting to a specific sentence. I don't know that she had an alternative theory. I mean, at the district court, I have to go back and look at the I'm not 100% sure, but I do think if the district court already said he has substantial mitigating factors that warrant a substantial downward departure from me, I'm not sure how the district court could say upon re-sentencing, I'm entirely ignoring all of that and instead giving . . . he now deserves what is the top of his guideline range with none of the mitigating factors being considered that are raised by either defense or  What's your best case . . . I'm sorry. No, I was just going to say in this case, if we find that there was error, then aren't we looking at whether or not she was influenced by an erroneous guidelines calculation? On this record, it's not clear that she wasn't. Isn't that your argument in that connection? Your Honor, I believe so, but I believe the case is . . . I'm going to miscite this. I think the case is Gall that says that every sentencing is supposed to be within a reasonable guideline range. Maybe I'm wrong on that. I don't think that was cited in my brief, but I do think that that's case law out there, and to me, if we are at 180 to 210 months and he's supposed to be at 77 to 96 months, we're not within a reasonable range. It totally changes his guidelines. You're talking about years of a person's life. I think Mr. Wade certainly would think it was substantial. I think it's substantial. Our question wasn't an unfriendly one, but go right ahead. It was a friendly question. It was very friendly. I apologize. You don't like it? Don't take it. Slightly less friendly question. I apologize. That is certainly one analysis for when a guideline range is incorrect. I think there's another analysis where the district court is aware of both the incorrect and the correct ranges. In other words, the district court is saying, well, look, there might be this range or there might be this range. If I'm wrong about this higher range, there might be this lower range, but I'd give the same sentence regardless, even if I am wrong about the higher range. Isn't it correct that . . . I mean, isn't it true that the district court did that here? It said, look, there's two possible ranges. I understand you object to the higher one, but even if I granted that objection, I would still come in at 96 months. I hope I'm understanding your question. It sounds like you're asking if the court hedged its bet. Yes. Okay. Yes. That may have happened. I don't know that it didn't. I mean, they can do that. They do that. Those district judges do that sometimes, right? They say, well, you have an objection, but even if you're right about that, I would still give the 96 months. Yes, Your Honor. Again, in the sentencing transcript, she took into account substantial mitigating factors, and I just . . . Just a quote. I believe this is from that hearing. I would have sentenced him to 96 months in either respect because if I'm wrong about the objection, I still believe that based on his criminal history, he deserves a term of 96 months on count one. So isn't that exactly the fact pattern we're talking about? May I respond? It is. I don't disagree that she said that. I think, though, if we're saying the sentencing guidelines matter at all, it matters that we didn't start with a reasonable guideline range because the ACCA enhancement was applied. And if we're talking about moving it down almost by half, that's certainly substantial and something I would hope any district court would take into account, regardless of what was said previously, especially when, again, there's substantial mitigating factors, which were already weighed at that hearing in his favor. Thank you. May it please the court. Good afternoon, Your Honors. Kimberly Hampton for the United States. This court should affirm. Christopher Wade pled guilty to the federal crime of felon in possession of a firearm while having three prior state convictions that sparked a mandatory minimum sentence under the Armed Career Criminal Act. The Armed Career Criminal Act imposes a mandatory minimum of 15 years imprisonment for defendants who are convicted of a 922G offense and have three prior state or federal convictions. Now, Mr. Wade's prior convictions was burglary of a dwelling, possession of methamphetamine with intent, and conspiracy to distribute more than 10 grams but less than 30 grams of methamphetamine. Wade raises two arguments in essence, that his prior conspiracy charge is not a predicate offense because it does not fall within the meaning of a serious drug offense, and that the district court engaged in case-specific analysis in its determination that the prior conspiracy charge qualified. Now, based on the definition of a serious drug offense and the guidance that we received from Shuler, we disagree with those arguments. Now, while McKinney may be an old case, we do feel that the First Circuit was on to something. They found that the relationship between a conspiracy and its object is plainly close enough that a conspiracy to possess with intent is an offense involving possessing with intent under the Armed Career Criminal Act. Remind me, was that McKinney, the First Circuit case? What definition of involving were they using? Because we had a broader one in a pre-Shuler case. You may be familiar with it in Vickers. And then Shuler seems to have a narrower definition, but I'm not sure what to make of that. Well, basically, I'm not 100 percent sure, Your Honor, as it relates to what definition they were using for involving, but I do believe they were using a more expansive definition of involving as it relates to a conspiracy charge. More expansive than Shuler? I'm sorry, Your Honor? You're saying more expansive than the definition in Shuler? No, not more expansive than the definition of Shuler. Shuler seemed to say, I mean, it's funny because this wasn't the issue in Shuler. Shuler was whether we had to do a generic offense analysis. But kind of in passing, the Supreme Court said, well, both parties agree that involving must mean necessarily requires. And that's broader. That is broader than what we said in a prior case related to, right? Involving. Yes, Your Honor. And so we've got . . . are you familiar with these more recent cases? We have Prentiss and Clark that talk about, did Shuler affect our precedent? And that's what I ask the other side, too. What is our precedent? I think Shuler is our precedent. Well, yeah, it's the Supreme Court, but I mean our precedent. Our, like, this court, right? I mean, I know that Shuler was decided we've got to follow it. Right. Well, I think that's important of why we're here today. Even though, like you said, the judge basically said, regardless, this particular 96 months would be set. I think that's why it's important that we're here today, basically, to kind of clear and make it clear of what that is that we follow in the field circuit. Well, so what's your argument under Shuler that this conspiracy to distribute is an offense involving distribution? So under Shuler, basically my argument is that the conspiracy charge would qualify. Because if you look at the Mississippi State statute, while we agree with Wade that under a conspiracy charge, 97-1-1 in Mississippi, you do have to have an agreement to commit a crime. However, Wade is overlooking the argument that you have to show that crime. Even more specifically as it relates to what Wade was indicted under and pled guilty to, his indictment basically says 97-1-1 and 41-29-139. That and means that you prove both elements of that. We know I'm a former assistant district attorney. As a district attorney, you prove what's in that indictment. Those are your elements. You prove what's in that indictment. So not only do you prove the agreement to commit a crime, in this instance you're also going to commit a crime. You're also going to prove the crime that was committed, and you're going to prove that because in this particular incident, yes, under the … My problem with that is can't you agree to commit a crime that never gets committed? I mean how would a prosecutor prove the commission of a crime if there was just an agreement and the crime was never committed? You could still get a conviction under Mississippi law for conspiracy for a crime that was never committed. And when I say the one that they agreed to commit never got committed, under Mississippi law you could get a conviction just for the agreement to commit it. Isn't that correct? That's correct. And you're basically relating to the overt act element of it, which is not required under Mississippi law. However, it's not required for federal conspiracy. The conduct in the statute says it's got to be manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance. That's a serious drug offense. Yes, Your Honor. It's got to be one of those. None of that is what happened with this conviction under Mississippi law. It's an agreement to either manufacture, distribute, possess. None of that has to happen for you to get a conviction under Mississippi law for the conspiracy. All they have to do is have two people agree and you get a conviction. As it relates to this case, Your Honor, I will have to respectfully disagree with you. He was indicted under 97-1-1 and 41-29-139, which basically states if the conspiracy that he conspired to commit was within the Uniform Controlled Substance Act, which he was indicted under. He was indicted for conspiring to distribute methamphetamine less than 10 grams, I mean more than 10 grams but less than 30. So the fact that now you have the element, you have to prove this particular crime. So then you do get into the kind of regardless of if you— When you say you have to prove it, the government, the state has to prove it? Yes, the state has to prove it. So the state cannot get a conviction under Mississippi law for conspiracy unless the state also proves that the crime was committed? Is that what you're telling me? As it relates to the charges he was indicted, Your Honor, I'm not talking about general conspiracy. You're absolutely right when it comes to general conspiracy. You just have to approve the agreement. Here, he was not indicted under just general conspiracy. And that is basically what I'm saying. Under Mississippi law, based on what Mr. Wade was indicted under, you would have had to prove the crime, the conspiracy to commit the crime, and the agreement and the crime in this particular case because it took the Senate from five years to 20 years. Now, I'm glad you mentioned involving because, like you say, in Shuler, we are told that the important question we look at is whether or not the elements of the stated offense at issue necessarily entail one of the types of conduct. So Wade raises the argument that the court looked outside of his particular charge. The charge is conspiracy to distribute methamphetamine. We feel that that charge necessarily entails the conduct of manufacturing, distributing, or possessing with intent to manufacture or distribute. Now, of course, Shuler tells us that we don't get into the labels or the actual facts of the case. However, I submit that when Wade raises the argument that the court doesn't know if there was even an attempt to do it or if the crime was completed, I think when you go into those, you're going into whether or not you're going into additional facts outside of what you're to look at with this particular case. With conspiracy to distribute, of course, you do not have to prove completion. You do not have to prove an attempt to do it. However, in this sense, I do think you have to prove the crime, which is the distribution of methamphetamine. Remind me, in the state, did a jury convict him? He pled guilty, Your Honor. He pled guilty, okay. What did he plead guilty? He pled guilty to just conspiracy? No, he pled guilty to conspiracy to distribute methamphetamine less than 30, more than 10. Okay. Now, also, as it relates to the approach that we look at in determining the elements of this particular case, does the conviction involve, involve means contain as part of, or closely relate to? We submit to the court that conspiring to distribute is closely related to or a part of this particular manufacturing, distributing, or possessing with intent to manufacture or distribute. Kind of what McKinney was saying in the First Circuit. Like I said, even though McKinney is old, McKinney is kind of on point as it relates to this particular circumstance. Now, we agree with Wade that only the elements of the offense should be considered when determining whether the conviction involves that conduct. However, we do not agree with the elements that Wade focuses on. He focuses on generally just 97-1-1, which covers the agreement to commit a crime. However, he fails to acknowledge the 41-29-139 that makes it, that prohibits the sale, barter, transfer, and distribution of methamphetamine. The fact that this was also listed within his indictment, once again, the prosecutor would have had to prove that particular element, and that element can be viewed when looking at whether or not it falls under the Armed Career Criminal Act. Now, also, we get into what the— Hold on. I want to make sure I understand your argument about this particular type of conspiracy. So let me just ask this straight up. If Wade had only agreed to engage in this drug act, in other words, he didn't actually commit the drug act, but he agreed to commit this drug act, would he be liable under 97-1-1-3 and the 41 provision that you talked about? That's a very— I think that gets to the nub of what Judge Graves was asking. So I think if he was only indicted under the conspiracy, then it would not fall under this particular circumstance. Why not? Because looking at 97-1-1—and by the way, one of the problems is your letter was a bit inaccurate. It says 97-1-9. That's what threw me. 97-1-1-3 just says where the crime conspired to be committed happens to be this drug offense. That doesn't say you have to actually commit the offense. It just has to be the predicate crime under the conspiracy. Correct. Correct. So you have to agree to commit this drug act, but this is no different than any other conspiracy under the statute, right? All you need is agreement. All you need is agreement under the Mississippi Conspiracy Charge. Yes, Your Honor. So if he had—just to be clear then—if he had agreed to commit this drug offense, that's enough to trigger this 20-year penalty under Mississippi law? Yes. Now we can ask a separate question, which is whether that's enough to constitute involving the drug offense. We do believe it's enough because the particular conduct that he's conspiring to do, the particular comment that he's in agreement to do, is dealing with involving manufacturing, distributing, or— What I heard earlier is attempt would be different. I don't want to put words in the opposing counsel's mouth, but somehow attempting this drug offense, that would be enough to fall within the ACCA, but merely agreeing to is not enough. I take it you think both are enough. I personally think both are enough, Your Honor. With attempt, I think the argument basically is there is counterconduct going towards that. However, as it relates to the conspiracy, I feel like making the agreement, that is still conduct as well involving what is your purpose, what is the purpose, what is the conduct and the object of your particular conspiracy of that agreement. So it's still conduct. Tell me one more time what statute he was convicted under. 97-1-1 and 41-29-139, Your Honor. So 97-1-1 is the one that's relevant here, or they're both relevant here? They're both relevant. And 97-1-1 is a conspiracy? Yes, Your Honor. And then 40—what's the other one? 41-29-139. And if I can explain, 97-1-1 has subsections, so— Oh, I'm looking at it. Okay. And so with subsection 1, it is just the agreement, agree to commit a crime. However, if you go down to subsection 3, which entails that 41-29-139, you will see that it says, where is the crime that you conspired to commit is under the Uniform Controlled Substances Act. It also mentions murder or capital murder, but here we're talking about the controlled substances. And then it mentions 41-29-139, which is the other one that you said is implicated. It mentions that statute in this? Yes, Your Honor. All right. All right. My take of your point is, if attempt to do the drug act but not actually doing the drug act, if that's enough under SHULAR, then why wouldn't agreement to do the act also be under SHULAR? Yes, Your Honor. We do think agreement is conduct, that you're agreeing to do something, and then you look at that. I think with Wade's argument, he just wants to look at the agreement, but you have to look at what were they agreeing to do. Furthermore, as stated, as it relates to basically the court looking at a case-specific analysis, we would disagree with this as well. Like I stated, in the indictment, it basically alleges both statutes, which shows that there's basically additional elements, not just the agreement to commit a crime. You also have to look at what you're agreeing to do. Now, Wade also mentioned death count. However, unlike in death count, where the court basically was found to have reviewed other things outside of, he reviewed record evidence in search of whether or not the generic offense was committed. That was not the case here. The judge basically used the pre-sentence report, the information in there. Furthermore, you know there's also judicially noticeable documents that you can use. Like I said, the indictment would be one of them, your charging document. You have to prove that indictment. In conclusion, Your Honor, we do agree with the way McKinney case ruled in this particular aspect as it relates to conspiracies include their object. They include the fact in this particular situation that it was distribution of methamphetamine less than 30 grams but more than 10. Furthermore, we think as it relates to a serious drug offense that this particular crime does qualify, and for these reasons we do ask the court to affirm. Did you, have we gotten, did we ask, has anyone asked you about harmless heroin? No, Your Honor. We talked to the other side about harmless heroin. What is, you have a very short brief, but I understand, short brief, there's nothing wrong with that. But you do make a harmless error argument, correct? Yes, Your Honor. Okay, well, in this case, what is your response to the other side's argument, which is, well, if we disagree with you on the merits, the range is totally off, so we've got to send it back because, you know, the range was off, so the district court might re-sentence and go way low in the correct range. Your Honor, I basically agree with the statement that was made that it would be a waste of time. I think the court made it very clear based on Wade's criminal history that he would be sentenced to 96 months regardless. I do not think there's anything that can show one way or the other if the higher guidelines kind of forced the 96 or if the lower guidelines gave a starting point. However, the court basically made it clear that the 96 months is what they would sentence this defendant to. I mean, in your view, was the district court aware that there was, if the district court had sustained the objection to the ACCA issue, there was another range possible, right, the lower range? Yes, Your Honor. I read the transcript as saying the district court was aware of that and said, regardless, I would have given 96 months. I agree. Okay. If there are no additional questions. I guess not. Rebuttal. Did I hear you correctly earlier? I don't want to put words in your mouth. If somebody attempts to do this drug crime, that's enough under Shular. That's involving the drug crime. But merely agreeing to do the drug crime, that's not enough. Is that your position or am I misstating? I believe so, Your Honor. I think that is what I said earlier. I hope that's what I said earlier. Well, I thought you said that's a different case, that's not this case, and you didn't want to take a position on that. But now you're agreeing with just what I said. I may have said that, too, Your Honor. I'm sorry. I'll be clear. I am not trying to put words in your mouth, but I am trying to understand a coherent theory of the law. So I think it would be helpful to take a position on agreeing. You don't have to. Obviously, I can't make you. But to understand whether agreeing is enough, it would be helpful to know what's the principled line that you're drawing. Is it between agreeing and attempting, or is it between agreeing and attempting and doing the thing? Yes, Your Honor. I think it's entirely dependent on how the state law defines the elements of the crime. If Mississippi requires an overt act for attempt, it may be that that overt act – I'm stipulating all that. I said just agreeing. Okay. I didn't say overt act. I said agreeing. Right. Or attempting to do the act, but not doing it. Those are the two fact patterns. And are you saying both are outside? I don't know that it – Or attempting is inside, but agreeing is outside. I think attempting is likely inside. The reason why is because attempt says – generally, generically speaking. I don't have the statute in front of me. But attempt says you went out on the limb toward – you took a step in the direction of doing the crime. Something intervened. You didn't actually do it. Right. That's still necessarily entailing an interview. You were cut off from doing it. But there was some action toward. That's not the fact pattern with conspiracy. Ms. Hampton is saying, well, there's two – there's two – Well, your agreeing is also an act toward. It's not an overt act. But it's certainly not doing anything. You're agreeing to do something. It's conduct. I believe it's the conduct that Shuler – I think that is the limit of the conduct. Bottom line is short of actually completing the act, there are things that you can do that still fall within involving. You just think that a mere conversation and a mere agreement is not enough. I think a mere agreement is not enough. What I'm struggling with is why is the line drawn there. That I'm having trouble with. I think mere agreement is not enough because we don't know if it was attempted. We don't know if you went out and attempted to do the distribution. It may be that attempt is – the line should not be drawn there. I'm not suggesting that I know where to draw the line, just to be completely honest with you. What about aiding and abetting? Aiding and abetting? I would have to see what the statutory elements are under Mississippi law. I just told you it's a crime to aid and abet somebody else to engage in this drug crime. You didn't do it yourself at all. Your Honor, I don't know. I'll just be completely honest. I don't know. What I do know, or what I think I know, is that conspiracy, simple agreement, is not enough. Again, we don't know if any action was ever taken towards the underlying crime. Ms. Hampton is arguing that, well, there's two statutes that should be the operative standard. I disagree. I think 9711 is the operative standard. He was convicted of conspiracy. Yes, I mean, he's not going to be convicted of conspiracy when there's no unlawful purpose. So I certainly think that 4129.139 was referenced as the unlawful purpose. It was certainly used to enhance his sentence under 9711. But 9711 is the operative statute. Again, Ms. Hampton had said, well, we need to be considering under Shular the particular conduct that he's conspiring to do. We need to think about the distribution because that's what he's agreeing to do. No, he's agreeing, and that's the conduct. That's the extent of the conduct under Shular. That would be what we would believe to be true, and that's what I believe is required under Shular. Shular says, look to a defendant's conduct. In this case, his conduct was in agreement with another person, and it may have stopped there. We don't know that, but that's what the statutory elements require. Deskamp says you can't look beyond that because you don't have a divisible statute. So the district court should have considered only the agreement for the purposes of deciding whether or not it involved or necessarily required manufactured distribution or possession with intent. That's all I have. Thank you. Thank you, counsel. Thank you. The court will take this matter under advisement. The next case is